616 So.2d 811 (1993)
John L. GREER, et al., Plaintiff-Appellants,
v.
STATE of Louisiana, et al., Defendant-Appellee,
(OXY USA, Inc. & Crystal Oil Company), Defendant-Appellants.
No. 24,552-CA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
*812 Mills, Timmons & Flowers by J. Broocks Greer, III, Shreveport, for Greer Group, plaintiffs-appellants.
Blanchard, Walker, O'Quin & Roberts by J. Jay Caraway, Shreveport, for OXY USA, Inc. and Crystal Oil Co., defendants-appellants.
Richard P. Ieyoub, Atty. Gen., E. Kay Kirkpatrick, Gary L. Keyser and David C. Kimmel, Asst. Attys. Gen., Baton Rouge, for State of Louisiana, defendant-appellee.
Before NORRIS, LINDSAY and VICTORY, JJ.
LINDSAY, Judge.
This suit is for reformation of a mineral lease granted in favor of the plaintiffs (hereinafter referred to as the Greer Group) by the Mineral Board of the State of Louisiana. The trial court sustained an exception of res judicata in favor of the State. For the reasons assigned below, we reverse the judgment and remand the case to the trial court for further proceedings.

FACTS
This case arises from the same facts set forth in Cities Service Oil and Gas Corporation v. State of Louisiana, 574 So.2d 455 (La.App. 2d Cir.1991), writs denied, 578 So.2d 132, 134, 136, 137 (La.1991), reconsideration denied, 580 So.2d 663 (La.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 186, 116 L.Ed.2d 147 (1991).
Briefly stated, Cities Service involved a concursus proceeding which was invoked in 1985 to determine ownership of $15,000,000 in mineral revenues from a tract of land located near the boundaries of Caddo and Bossier Parishes in the flood plain of the Red River.
*813 In 1972, the State granted a mineral lease (hereinafter referred to as the "State Lease") in favor of the Greer Group covering the bed of the Red River. Production was obtained, and a unit was established. Thereafter, the Red River meandered in a westwardly direction until its movement was ultimately stopped by revetment work performed by the Army Corps of Engineers. Determination of ownership of the proceeds in the concursus was complicated by this westward movement of the Red River between 1966 and 1978, which changed the ownership of the surface of the land. There were disputes over the effect of the river's movement on mineral leases covering some of the property in the vicinity of the Red River. Several claimants in the concursus sought application of LSA-R.S. 9:1151, the so-called "Freeze Statute," which "freezes" the effects of mineral leases when the ownership of land or water bottoms change as the result of the movement of navigable water bodies. One such mineral lease was the 1972 State Lease.
Seven groups of litigants in the concursus claimed various interests in the mineral revenues. Of these, only four groups are relevant to the present case. These litigants (and the interests they claimed) are as follow:
(1) the State of Louisianaownership of the present and former beds of the Red River;
(2) the Greer Groupthe 1972 State Lease which covered the bed of the river;
(3) the Clements Groupownership of property which was west of the river in 1972;
(4) the Operators (Cities Service Oil & Gas Corporation, now OXY USA, Inc., and Crystal Oil Company, the oil companies that invoked the concursus proceedings)owners of mineral interests obtained from members of several of the other groups.
In the first suit, the State and the Greer Group contended that the State Lease moved with the bed of the Red River as it meandered, consequently entitling them to the proceeds attributable to both the present bed and the former bed of the river. To the contrary, the Clements Group contended that they had a mineral lease which affected the present bed of the river.
The parties to the concursus filed a joint motion for partial summary judgment seeking a determination of their claims under the terms of the "Freeze Statute." The trial court found, in relevant part, that the State Lease in favor of the Greer Group applied to the riverbed as it existed when the lease was granted in 1972, the lease did not move with the river, and that the lease did not affect the present riverbed or other land in that area. Accordingly, as to the former riverbed, the Freeze Statute maintained the mineral ownership rights of the parties to the 1972 State Lease. It further found that the Clements Group's mineral rights in the new riverbed had expired in 1978 at the end of the 1974 Clements lease; since that time the State has owned the new riverbed free of the Clements lease.
Following the rendition of the trial court opinion, the Greer Group filed a motion for reconsideration. The State filed a memorandum in support of the motion in which it specifically concurred with the Greer Group's position that the issue before the trial court of whether the State Lease followed the riverbed as the river moved westward was not before the court on the motion for partial summary judgment. The trial court denied the motion for reconsideration.
All parties, except the State, either appealed or answered the appeals. This court affirmed the judgment of the trial court. On appeal, the Greer Group and the Operators contended that the trial court erred in finding that the State Lease did not affect the present riverbed. They contended that such a finding was beyond the scope of the joint motion for partial summary judgment. However, this court found no merit to this argument. We held that a thorough resolution of the effect of the Freeze Statute on the property required a determination of the current status of the mineral ownership of the new riverbed.
*814 The Greer Group and the Operators also asserted that the trial court erred in finding that the State Lease did not follow the river wherever it moved. However, this court agreed with the trial court, referring to the language of the lease itself, which did not provide for the lease to follow the movement of the river.
The present suit arose in January, 1992, when the Greer Group filed a petition to reform the State Lease. Named as defendants were the State and the Operators. (The Operators were included as defendants because of their status as co-owners of the State Lease.) The Greer Group claimed that the original intentions of the parties to the lease (i.e., the lessee, John B. Greer, Jr., and the Mineral Board, acting on behalf of the State) was that the lease would cover the riverbed, no matter where the river might wander. The Greer Group contended that, to the extent that the State Lease has been found to have no effect on any water bottoms or beds except those as they existed at the time the State Lease was granted, a mutual mistake occurred in the confection of the lease. In so doing, the Greer Group sought to reform the State Lease so that it covers the present bed of the Red River.[1]
The Operators filed an answer admitting the allegations in the plaintiffs' petition. They also asserted a cross-claim in which they likewise requested judgment against the State reforming the property description in the State Lease to reflect that it covers the present bed of the Red River.
The State filed a peremptory exception of res judicata. It contended that the instant suit asserts a cause of action which arose out of the original transaction or occurrence which was the subject matter of the previous concursus action. The State later filed an amended exception in which it included the Operators' cross-claim.
The exception of res judicata was argued and sustained by the trial court on May 28, 1992. The resulting judgment dismissed the plaintiffs' suit, at their cost, with prejudice, as well as the Operators' cross-claim.
The Greer Group and the Operators filed a joint motion for appeal.

RES JUDICATA

Law
The law of res judicata applicable to the present case is set forth in former LSA-C.C. Art. 2286[2]:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
Additionally, LSA-C.C. Art. 3506(31) [formerly LSA-C.C. Art. 3556(31) prior to its redesignation in 1991] defines the term "thing adjudged" as follows:
Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal.
For res judicata to apply, there must be (1) an identity of the parties; (2) an identity of "cause"; and (3) an identity of the thing demanded. Slocum v. Daigre, *815 424 So.2d 1074 (La.App. 3d Cir.1982), writ denied, 429 So.2d 128 (La.1983).
The doctrine of res judicata is strictly construed. Any doubt as to compliance with its requirements is to be resolved in favor of maintaining the plaintiff's action. General Truck Drivers, Warehousemen and Helpers Local Union No. 5 v. Altex Ready-Mixed Concrete Corporation, 385 So.2d 325 (La.App. 1st Cir.1980); Kennedy v. Ebarb, 563 So.2d 1341 (La.App. 3d Cir.1990).
The party urging the exception of res judicata has the burden of proving each essential element by a preponderance of the evidence. SJ v. PM, 586 So.2d 662 (La.App. 2d Cir.1991). The absence of any of these requisite elements is fatal to a plea of res judicata. Welch v. Crown Zellerbach Corporation, 359 So.2d 154 (La.1978).
The authority of res judicata takes place only with respect to what was the object of the judgment. An issue presented by the pleadings in a cause, but eliminated from the judgment of the court, cannot be invoked in support of the plea of res judicata. Lamana v. LeBlanc, 526 So.2d 1107 (La.1988).
An examination of the issues actually litigated shall be determined not solely from the examination of the pleadings but by the examination of the entire record of the first suit. Dixon, Booksh and Zimmering, Res Judicata in Louisiana Since Hope v. Madison, 51 Tul.L.Rev. 611, 622 (1977); Lamana, supra. The theory of civilian res judicata is that matters actually litigated and finally adjudged are presumed correct and thus should not be contradicted in a subsequent suit. Lamana, supra.
Identity of the parties does not mean the parties must be the same physical or material parties, but they must appear in the suit in the same quality or capacity. Charles E. McDonald Land Development, Inc. v. Cashio, 552 So.2d 1050 (La.App. 1st Cir.1989).
It is well-settled that the term "cause of action," as used in LSA-R.S. 13:4231, is a mistranslation from the French and really refers to the civil concept of cause. Mitchell v. Bertolla, 340 So.2d 287 (La.1976); Dixon, Booksh and Zimmering, Res Judicata in Louisiana Since Hope v. Madison, supra at 619.
"Cause" is said to be the juridical or material fact which is the basis of the right claimed, or the defense pleaded. It can be likened to "grounds," "theory of recovery," or the principle upon which a specific demand is grounded. Mitchell v. Bertolla, supra.; Cantrelle Fence and Supply Company, Inc. v. Allstate Insurance Company, 515 So.2d 1074 (La.1987); Dixon, Booksh and Zimmering, Res Judicata in Louisiana Since Hope v. Madison, supra at 619.
The "thing demanded" has been defined as the "kind of relief sought." Kennedy v. Ebarb, supra; Dixon, Booksh and Zimmering, Res Judicata in Louisiana Since Hope v. Madison, supra at 621.
It is well established that either party to a contract is permitted to correct any error in an instrument purporting to evidence the contract, so as to make it express truly and correctly the intention of the parties, provided that the rights of third parties have not intervened. Succession of Jones v. Jones, 486 So.2d 1124 (La.App. 2d Cir.1986), writ denied, 489 So.2d 249 (La.1986). This includes the right to correct inaccurate legal descriptions contained in real estate contracts. Freeman v. Williams, 450 So.2d 1030 (La.App. 1st Cir.1984), writ not considered, 456 So.2d 162 (La.1984); Pipes v. Pipes, 343 So.2d 329 (La.App. 2d Cir.1977), writ denied, 345 So.2d 904 (La.1977); Succession of Jones v. Jones, supra.
"The burden is on the party seeking reformation to establish the necessary elements by clear and convincing proof, parol evidence being admissible for this purpose. The most commonly used ground for reformation is mutual mistake of the parties. A mutual mistake is a mistake shared by both parties to the instrument at the time of reducing their agreement to writing, and the mistake is mutual if the contract has *816 been written in terms which violate the understanding of both parties; that is, if it appears that both have done what neither intended. The evidence of mutuality must relate to the time of the execution of the instrument and show that the parties then intended to say one thing and by mistake expressed another and different thing. [Citations omitted.]" Succession of Jones v. Jones, supra.

Identity of the Parties
The appellants contend that the trial court erred in finding that the same parties were formed against each other in the same quality in the two suits. While they concede that all of the parties in the second suit were parties to the concursus, the appellants point out that the Greer Group and the State were not specifically aligned against each other in that proceeding. In particular, the appellants argue that the State and the Greer Group were originally aligned together in asserting that the State Lease moved westward with the bed of the river. At that time, the only serious argument about the effect of the State Lease on the present riverbed pitted the State and the Greer Group against the Clements Group. However, after the trial court rendered judgment in favor of the State, the State changed sides on appeal and sought affirmance of the trial court ruling, which was adverse to the Greer Group, but was to the State's benefit.
Examination of the pleadings from the concursus suit reveals that the State, like the Greer Group, originally assumed that the State Lease moved with the bed of the Red River as it meandered westward. In fact, the State continued to assert this proposition, even after the trial court ruled on the motion for partial summary judgment, as shown by its memorandum in support of the Greer Group's motion for reconsideration of the trial court decision.
The appellants complain that, because the State and the Greer Group were aligned together as to the effect of the State Lease on the present bed of the river prior to the trial court ruling on the motion for partial summary judgment, the Greer Group had no opportunity to present any evidence on the issue of the intent of the parties when the State Lease was confected, or the intent of the parties as to the meaning and effect of the lease. (We note that the case was presented to the trial court on a joint stipulation of facts.)
We recognize that in a concursus, each defendant is considered as being both a plaintiff and a defendant with respect to all other parties. LSA-C.C.P. Art. 4656. However, the State and the Greer Group were not truly adverse parties until the prior proceeding reached the appellate court, at which point the Greer Group was effectively precluded from presenting evidence as to the intent of the parties to the State Lease.
See and compare Prestridge v. Humble Oil & Refining Company, 131 So.2d 810, 818 (La.App. 3d Cir.1961), and Rivet v. First Financial Bank, FSB, 538 So.2d 216 (La.1989).
Consequently, we find that the two proceedings were not brought by the same parties "against each other" in the same quality. Accordingly, because res judicata is strictly construed and failure of even one of the three elements is sufficient to defeat an exception of res judicata, we find that the trial court erred in sustaining the exception.
However, out of an abundance of caution, we will consider the other elements of res judicata.

Identity of the Thing Demanded
In the present case, the "thing demanded" is reformation of the State Lease to reflect the alleged true intentions of the parties to the contract.
The object of the judgment in the first proceeding was to determine the application of the Freeze Statute to the ownership of the mineral rights at issue in the concursus. The case was submitted to the courts on stipulations in the context of a motion for partial summary judgment. The intent of the parties to the State Lease was not litigated at that time. The Greer Group did not seek to reform the terms of the State *817 Lease in that proceedings. Nor would reformation of the State Lease have been appropriate in view of the involvement of third parties in the litigation and the necessity of determining their interests. To the contrary, the Greer Group's contention in the first proceeding was that the lease as written provided that it moved with the bed of the river wherever it wandered. The court in Cities Service determined that such was not the case.
We find that there is no identity of the thing demanded. The judgment rendered on the motion for partial summary judgment in the concursus dealt with the application of the Freeze Statute to the immovable property at issue. The overwhelming concern of the court in that case was the effect of the State Lease as written, particularly because of its effect on third parties to the contract. The intentions of the parties to the lease were not relevant to the issues before the court at that time.
The State contends, based upon a comment in our opinion in the Cities Service case, that the Greer Group waived its opportunity to seek a remand on the issue of the acreage covered by the State Lease in the first proceeding, and that it is now precluded from raising the issue. In Cities Service, we commented that during oral argument the Greer Group had renounced any desire for a remand to the trial court for additional consideration of the effect of the State Lease and the area covered thereby. However, we observe that reformation was not at issue there as it is in the present suit. More importantly, in the context of application of the Freeze Statute, the effect of the State Lease, a written document recorded in the public records, was a question of law. Cities Service, supra 574 So.2d at 461. Thus, a remand at that time was not a viable option.

Identity of Cause
We have also considered whether there is an identity of cause in the two suits. We find that the cause, or theory of recovery, in the present suit is mutual mistake by the parties in the confection of the State Lease. No such issue was litigated in the concursus.

CONCLUSION
Based on the foregoing, we find that the trial court erred in sustaining the exception of res judicata. Consequently, the judgment of the trial court sustaining the exception of res judicata is reversed, and the matter is remanded to the trial court for further proceedings. Costs of the appeal are assessed against the appellee.
REVERSED AND REMANDED.
NOTES
[1] We note that there is language in the petition to the effect that the State Lease covered the water beds and bottoms within the designated lease area wherever they might be during the existence of the lease. However, we, like the Operators, perceive this suit for reformation as applying only to the present riverbed.
[2] LSA-C.C. Art. 2286 was redesignated LSA-R.S. 13:4231 by Acts 1984, No. 331, § 7. This statute was substantially amended in 1990. Acts 1990, No. 521 provided for an effective date of January 1, 1991, and stated that the new provisions applied to all civil actions filed on or after January 1, 1991. However, it also stated that the "preclusive effect and authority of a judgment rendered in an action filed before the effective date of this Act shall be determined by the law in effect prior to January 1, 1991." Therefore, since the concursus was filed in 1985, we will examine the preclusive effect of the judgment in that case according to the provisions of the "old" res judicata law.