**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-30588

THE LAFRENIERE PARK FOUNDATION,

Plaintiff - Appellant,

VERSUS

AARON F BROUSSARD, In his official and individual capacity as a duly elected member of the Jefferson Parish Council, the governing body of the Parish; THOMAS J WARD, In his official and individual capacity as a duly elected member of the Jefferson Parish Council, the governing body of the Parish; LLOYD F GIARDINA, In his official and individual capacity as a duly elected member of the Jefferson Parish Council, the governing body of the Parish; DONALD L JONES, In his official and individual capacity as a duly elected member of the Jefferson Parish Council, the governing body of the Parish; EDMOND J MUNIZ, In his official and individual capacity as a duly elected member of the Jefferson Parish Council, the governing body of the Parish; JOHN T LAVARINE, JR, In his official and individual capacity as a duly elected member of the Jefferson Parish Council, the governing body of the Parish; NICHOLAS F GIAMBELLUCA, SR, In his official and individual capacity as a duly elected member of the Jefferson Parish Council, the governing body of the Parish; TIM P COULON, In his official and individual capacity as the duly elected Parish President; PARISH OF JEFFERSON, A political subdivision of the State of Louisiana,

Defendants - Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

August 8, 2000

Before GARWOOD, WIENER, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The Lafreniere Park Foundation (the Foundation),a nonprofit corporation, appeals the district court's dismissal of its 42 U.S.C. § 1983 claim against the members of the Jefferson Parish Council. The Foundation alleged that the Jefferson Parish Councilmen and President, each sued in their individual and official capacities, violated the Foundation's First Amendment rights to free speech and association and Fourteenth Amendment rights to procedural due process by evicting the Foundation from the Foundation Center Building (Center) in Lafreniere Park, by freezing the Foundation's assets, and by confiscating Foundation property. In response to the defendants' motions to dismiss and for summary judgment, the district court dismissed all of the Foundation's claims against each of the defendants. The Foundation appealed assigning as error the adverse judgment rejecting its First Amendment claims against the councilmen. Concluding that the res judicata effect of previous state court litigation precluded the present § 1983 action, we affirm.

I. Facts and Procedural History

In 1980 the Foundation was formed by the Lafreniere Park Advisory Board and the Jefferson Parish Council as a non-profit corporation under the laws of Louisiana as a fund raising organization for the benefit of Lafreniere Park. Principally, the Foundation was organized to generate public support for the Park by soliciting community support and contributions for the Park's capital improvements, recreational activities, and horticultural

2

needs. In 1982 the Parish Council loaned $460,000 to the Foundation for the construction of a building in Lafreniere Park to serve as the Lafreniere Park Foundation Center. The Parish and the Foundation entered into an agreement that the Center would be the property of the Parish but subject to the reasonable use of the Foundation. The Center was constructed, and the Foundation occupied the building, outfitted it with fixtures, furniture, and equipment, and repaid the loan. From 1983 to September 1996, the Foundation occupied the Center rent and utility free.

Over time the relationship between the Parish Council and the Foundation began to sour.[1] The Parish Council, allegedly concerned about a lack of accountability regarding the Foundation's expenditure of funds, sought to enter into a comprehensive agreement with the Foundation. The Foundation balked, allegedly out of its concern that such an agreement might result in the loss of its tax exempt status with the Internal Revenue Service. On August 14, 1996, the Parish Council adopted Resolution Number 82755. This resolution (1) withdrew Jefferson Parish's support of the Foundation; (2) canceled all existing agreements between the Parish Council and the Foundation; (3) gave the Foundation 30 days notice to vacate the Center; (4) required the Foundation to turn

---

[1]Recounting the long and tortured demise of this relationship is not necessary for purposes of this appeal, but the saga is more fully chronicled in two published state court opinions. See Parish of Jefferson v. Lafreniere Park Foundation, 720 So.2d 359 (La.App. 5th Cir. 1998) and Parish of Jefferson v. Lafreniere Park Foundation, 716 So.2d 472 (La.App. 5th Cir. 1998).

over to Jefferson Parish whatever money, equipment and other property belonging to the parish; and (5) authorized the Parish Attorney to initiate legal actions to effectuate the substantive components of the resolution.

A letter to vacate the center was delivered to the Foundation by the Parish Attorney, and in September 1996 the Parish Council locked the Foundation out of the Center and took control of the fixtures, furniture, and equipment.

a) The State Court Action

On October 22, 1996, the Parish of Jefferson filed suit in state court against the Foundation seeking a declaratory judgment (and alternatively alleging a breach of contract) decreeing that the funds held by the Foundation could only be spent for the benefit of Lafreniere Park in accordance with the Foundation's charter and bylaws. The Parish also sought a temporary restraining order (TRO), preliminary injunction, and permanent injunction restraining the Foundation from (1) spending any funds for any purpose other than for improvements at Lafreniere Park, (2) doing business with Foundation Board Members, (3) holding any fund raisers and presenting itself as an agency of Lafreniere Park, the East Jefferson Park and Community Center and Playground District of the Parish of Jefferson, or the Parish of Jefferson, and (4) soliciting funds from the general public by representing that the funds would be spent in the Park or at other Parish facilities. Paragraph XII of the complaint expressly referred to Resolution

4

Number 82775 whereby the Parish Council withdrew its support from the Foundation, canceled all agreements with the Foundation, and gave the Foundation 30 days to vacate the Center and turn over to the Parish Council certain monies, equipment and other property.

In its answer, the Foundation, its President (Thomas C. Chambers), and its Executive Director (Carol Berlier) asserted a reconventional demand alleging that the Parish Councilmen, defendants-in-reconvention, had maliciously instigated the principal action fully aware that there was no basis in law or in fact to support it. The reconventional demand purported to name as defendants-in-reconvention the Councilmen in their individual capacities, and it sought damages for their tortious conduct in authorizing the principal action in violation of the plaintiffs'-in-reconvention federal and state constitutional and statutory rights of due process and equal protection under the law. The Foundation sought to recover damages resulting from the wrongful deprivation of its property, public humiliation, and loss of reputation and damage to its good name in the community.

On November 19, 1997, following a bench trial, the state court entered judgment for the Parish of Jefferson (1) declaring that Foundation's funds and assets could only be expended on Lafreniere Park; (2) ordering the Foundation to transfer into the registry of the court all of its funds and assets within seven days; (3) ordering the Foundation to submit all books and records to the Parish Attorney within 21 days for an accounting; (4) permanently

enjoining the Foundation from disbursing any funds to any organization other than for the benefit of Lafreniere Park; and (5) dismissing with prejudice the Foundation's reconventional demand. This judgment was affirmed on appeal. See Parish of Jefferson v. Lafreniere Park Foundation, 716 So.2d 472 (La.App. 5th Cir. 1998).

b) The Federal Court Action

By way of an original and a supplemental and amending complaint filed by the Foundation on March 21, 1997 and April 6, 1998, respectively, the Foundation brought suit in federal court under 42 U.S.C. § 1983 against the Parish, the Parish President, and the Parish Councilmen, with the President and Councilmen being sued both in their individual and official capacities. This suit alleged that the Parish Councilmen, by adopting and implementing Resolution Number 82775, locking the Foundation out of the Center, and confiscating the fixtures, furniture, and equipment, had deprived the Foundation of its property and of its right to occupy the Center without due process of law in violation of the Fourteenth Amendment. This suit also alleged that by authorizing the state suit filed in October 1996 and in securing a TRO (and six extensions of the TRO) freezing the Foundation's assets, the Parish Councilmen had retaliated against the Foundation due to its refusal to fire Carol Berlier, the Foundation's Executive Director, and sought to use the pending state litigation as leverage to induce her termination, in violation of the Foundation's First Amendment rights of free speech and association. The Foundation specifically

6

prayed for damages in the amount of the value of the Center and/or the value of its leasehold interest in the Center, the value of the fixtures, furniture, equipment, the loss of income due to the eviction, as well as for punitive damages, attorney fees, costs, and judicial interest.

The defendants answered each complaint in turn, and on December 29, 1997 filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6) based, inter alia, on the defense of legislative immunity. On March 23, 1998, the defendants filed a motion for summary judgment asserting the defense of res judicata.

On September 30, 1998, the district court granted in part the Rule 12(b)(6) motion and dismissed (1) the Foundation's due process claims; (2) the Foundation's First Amendment claims against the Councilmen in their individual capacities due to their entitlement to legislative immunity; and (3) the Foundation's claims against Parish President Tim Coulon in his individual capacity. The district court subsequently granted the defendants' motion for summary judgment on May 28, 1999 due to the res judicata effect of the prior state court litigation. By an amended order of the same date, the district court dismissed the case against President Coulon in his official capacity. Accordingly, the district court entered a final judgment dismissing the suit. The Foundation appealed.

In its appeal, the Foundation seeks relief only from the

7

district court's dismissal of its First Amendment claim against the Councilmen.  The Foundation argues that: (1) the Parish Council's resolution was an administrative order, not a legislative act, and therefore the Councilmen are not entitled to legislative immunity from suit or liability in their individual capacities for their constitutional violations; (2) the prior state court litigation does not give rise to res judicata because there is an absence of identity of the parties, the causes of action asserted in the state and federal suits do not arise from the same transaction or occurrence, and the Councilmen waived the defense by their failure to raise it in their first responsive pleading.

We conclude that res judicata bars the Foundation's First Amendment claim in the present case.  Therefore, we do not reach the issue of legislative immunity.

## II.  Analysis

We review a summary judgment under the same standards that govern the district court's ruling. See Gulf Island-IV, Inc. v. Blue Streak-Gulf Island Operations, 24 F.3d  743, 745 (5th Cir. 1994)(citing Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989)).  "Therefore, the summary judgment will be affirmed only when this Court is convinced, after an independent review of the record, that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Id. at 745-46 (quoting Herrera, 862 F.2d at 1159)(in turn quoting Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire

8

<u>Ins. Co.</u>, 832 F.2d 1358, 1364 (5th Cir. 1987) and Fed.R.Civ.P. 56(c))(internal quotation marks omitted).

First, we conclude that the defendants did not waive their res judicata defense. According to Federal Rule of Civil Procedure 8(c), the Councilmen should have either pleaded res judicata in their original answer or sought to amend their answer pursuant to Rule 15(a) to raise this affirmative defense. However, "where the matter is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply precisely with Rule 8(c) is not fatal." <u>Id</u>. at 312 (citing and quoting <u>Lucas v. United States</u>, 807 F.2d 414, 417 (5th Cir. 1986)(in turn quoting <u>Allied Chemical Corp. v. Mackay</u>, 695 F.2d 854, 855-56 (5th Cir. 1983))(internal quotation marks omitted). Rather, even if the Councilmen failed to raise the res judicata affirmative defense in an operative pleading, it will not be deemed to have been waived so long as it was asserted "at a pragmatically sufficient time, and [the Foundation] was not prejudiced in its ability to respond." <u>Id</u>. (citing <u>Lucas</u>, 807 F.2d at 418). The Councilmen raised the defense in a motion for summary judgment filed on March 23, 1998, fourteen months prior the district court's granting it on May 28, 1999. Because the Foundation availed itself of this ample period to file three opposition memoranda and the Foundation was not prejudiced in its ability to oppose the motion, we conclude that the Councilmen raised the res judicata defense at a pragmatically sufficient time.

Additionally, the Foundation in each of its three opposition memoranda sought to defeat the res judicata defense on the merits, without raising the waiver objection. Thus, res judicata was tried with the express or implied consent of the parties pursuant to Rule 15(b).[2]  See Shanbaum, 10 F.3d at 312-13.

To determine the preclusive effect of a prior Louisiana court judgment, if any, this court must apply Louisiana law.  See Amica Mutual Ins. Co. v. Moak, 55 F.3d 1093, 1096-97 (5th Cir. 1995)(citing J.M. Muniz, Inc. v. Mercantile Texas Credit Corp., 833 F.2d 541, 543 (5th Cir. 1987)).  In pertinent part, Louisiana's res judicata statute provides that "[e]xcept as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent: . . . (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action."  La. R.S. 13:4231. Because § 4231 is modeled on the federal doctrine and Restatement of Judgments, replicating the same concepts of bar and merger, see, e.g., Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 666 So.2d 624, 631-32 (La. 1996), we consult federal res judicata

---

[2]"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Fed.R.Civ.P. 15(b) (in pertinent part).

10

jurisprudence for guidance, see e.g., Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270, 273 (La. 1986), as well as the Restatement of Judgments. See, e.g., Goodman v. Spillers, 686 So.2d 160, 166-69 (La.App. 2nd Cir. 1996) (citing Restatement (Second) of Judgments, §§ 22, 24, and 27 and comments); see also 1 Frank L. Maraist & Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 6.7 (1999) (Louisiana employs a broad form of res judicata similar to the "bar or merger" doctrine in the common law as espoused in §§ 18 and 19 of the Restatement (Second) of Judgments).

The state court's dismissal with prejudice of the Foundation's reconventional demand bars a subsequent federal suit if (1) the judgment is valid; (2) the judgment is final; (3) the parties to the two actions are the same; (4) the cause of action asserted in the federal suit existed at the time of the prior state court judgment; and (5) the cause of action asserted in the federal suit arose out of the transaction or occurrence that was the subject matter of the state court litigation. See La.R.S. 13:4231. Louisiana's doctrine of res judicata can only be invoked if all essential elements are present and established beyond all question. See Kelty v. Brumfield, 633 So.2d 1210, 1215 (La. 1994). The rule expressed in Louisiana Revised Statute 13:4231(2) that a judgment in favor of the mover operates to bar subsequent actions arising out of the transaction or occurrence that was the subject matter of that litigation applies with equal force to plaintiff's principal action and the plaintiff-in-reconvention's reconventional demand.

11

<u>See</u> Restatement (Second) of Judgments § 19 cmt. c and § 23 (1982).

"To have any preclusive effect a judgment must be valid, that is, it must have been rendered by a court with jurisdiction over the subject matter and over the parties, and proper notice must have been given."  La.R.S. 13:4231, cmt. d.  The Foundation does not dispute the Councilmen's satisfaction of these requisites.

Nor does the Foundation dispute that, under Louisiana Code of Civil Procedure Article 1673,[3] the state court's dismissal with prejudice of the Foundation's reconventional demand was a final judgment for res judicata purposes.  <u>See</u> <u>Leon v. Moore</u>, 731 So.2d 502, 505 (La.App. 1st Cir. 1999); Maraist & Lemmon, <u>supra</u>, § 10.3 at 239.

Under § 4231's provision that "a valid and final judgment is conclusive between the same parties", <u>see</u> La.R.S. 13:4231, "[i]dentity of parties does not mean the parties must be the same physical or material parties, but they must appear in the suit in the same quality or capacity." <u>Morris v. Haas</u>, 659 So.2d 804, 810 (La.App. 5th Cir. 1995)(citing <u>Charles E. McDonald Land Development Inc. v. Cashio</u>, 552 So.2d 1050 (La.App. 1st Cir. 1989) and <u>Greer v. State</u>, 616 So.2d 811 (La.App. 2nd Cir. 1993)).  In brief and

---

[3] "A judgment of dismissal with prejudice shall have the effect of a final judgment of absolute dismissal after trial.  A judgment of dismissal without prejudice shall not constitute a bar to another suit on the same cause of action."  La. Code Civ. P. art. 1673.

initially at oral argument, the Foundation argued that this requisite was lacking because the Councilmen were sued only in their individual capacities in the state reconventional demand but were made defendants both individually and in their official capacities in the present case. During oral argument, however, the Foundation conceded that identity of parties was satisfied because, as defendants in the state court action, they were required to "assert in a reconventional demand all causes of action that [they] may have against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action."[4] See La. Code Civ. P. art. 1061.

The Foundation's present federal cause of action existed at the time the Foundation filed its state reconventional demand because both causes of action arose out of the same prior occurrence or transaction. The Councilmen evicted the Foundation from the Center and laid claim to the Foundation's funds and equipment prior to bringing suit against the Foundation in the state court litigation pursuant to Council Resolution No. 82775.

---

[4]Article 1061B provides a related but distinct source of claim preclusion. Irrespective of whether the federal claims arise out of the same transaction or occurrence as the state reconventional demand, if the Foundation's federal claims arise out of the same transaction or occurrence as the state court principal demand, the Foundation's failure to assert them in the reconventional demand bars the claims in the subsequent federal action. See La. Code Civ. P. art. 1061B; Hy-Octane Investments, Ltd. v. G & B Oil Products, Inc., 702 So.2d 1057, 1059-60 (La.App. 3rd Cir. 1997) (citing and quoting La.R.S. 13:4231 comment (a) and La. Code Civ. P. art. 1061 comment (a))

13

Any claim arising out of the alleged violations of the Foundation's First Amendment and procedural due process rights resulting from the Councilmen's actions accrued before the Foundation filed its combined answer and reconventional demand against the Councilmen in the state court action.

Because the plaintiff in the state action was the Parish of Jefferson, the Foundation could have asserted in reconvention its First Amendment claims against the Parish and the Councilmen in their official capacities. A reconventional demand against the Councilmen in their official capacities would have operated as a legal fiction and would have been in reality a suit against the Parish of Jefferson. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.")(citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985).

Thus, in the state lawsuit, the Foundation was required either to assert its federal claims against Jefferson Parish and the Councilmen in their official capacities or to have them barred in a subsequent suit. Consequently, as conceded by the Foundation at oral argument, the requisite identity of parties has been satisfied because the Foundation actually sued the Councilmen in their individual capacities in each case, and the Foundation, in effect,

14

was required to assert its First Amendment claim against the Parish and the Councilmen in their official capacities in reconvention in the state lawsuit.

Louisiana Revised Statute 13:4231 provides a broad application of res judicata to foster judicial efficiency and protect litigants from duplicative litigation. See Goodman v. Spillers, 686 So.2d 160, 165 (La.App. 2nd Cir. 1994)(citing Prudhomme v. Iberville Insulations, 633 So.2d 380 (La.App. 3rd Cir. 1994)). With the amendment of § 4231 in 1990, Louisiana broadened its res judicata law to correspond with federal law by embracing the notion of "extinguishment" of the cause of action through the preclusion concepts of "merger" and "bar." Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 666 So.2d 624, 630-31 (La. 1996) (citing and quoting Dixon, Booksh, Zimmering, Res Judicata in Louisiana Since Hope v. Madison, 51 Tul.L.Rev. 611 (1977) and Arbour, The Louisiana Concept of Res Judicata, 34 La.L.Rev. 763, 764 (1974)) (internal quotation marks omitted). "The central inquiry is not whether the [federal] action is based on the same cause or cause of action (a concept which is difficult to define) but whether the [federal] action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the [state principal or reconventional] action." Id. at 631 (citing comments-1990 La.R.S. 13:4231); see also Steptoe v. Lallie Kemp Hospital, 634 So.2nd 331, 335 (La. 1994).

According to the Restatement (Second) of Judgments §24(1), the

15

claim extinguished by a first judgment "includes all rights of the plaintiff[-in-reconvention] to remedies against the defendant[-in-reconvention] with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."

> What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 24(2). See <u>Hy-Octane Investments, Ltd. v. G & B Oil Products, Inc.</u>, 702 So.2d 1057, 1060 (La.App. 3rd Cir. 1997) (quoting Black's Law Dictionary: "a group of facts so connected together as to be referred to by a single legal name; as a crime, a contract, a wrong.").

Under the Restatement's definitions of "transaction" and "series," the resolution was the critical "transaction," and the state suit principal demand, TRO, eviction, and confiscation of property were a "series" of connected transactions, out of which both the state reconventional demand and the federal action arose. <u>See</u> Restatement (Second) of Judgments § 24(2). Both of the actions concern a group of facts so connected as to constitute a single wrong and so logically related that judicial economy and fairness mandate that all issues be tried in one suit. In this appeal, the

16

First Amendment claim is an additional theory of recovery premised upon the same claim as the state reconventional demand, i.e. the Foundation's claim for damages caused by the adoption, implementation, and consequences of the Parish Council's Resolution Number 82755. Accordingly, under § 4231 the present federal action was extinguished by the prior state court judgment for the Parish and the Councilmen dismissing with prejudice the Foundation's reconventional demand and was subsequently barred by res judicata.

Having concluded that Louisiana's res judicata statute bars the Foundation's federal First Amendment claim against the Councilmen, we decline to address the Foundation's arguments that the Councilmen were not entitled to legislative immunity in their individual capacities.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

17