United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 20, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 03-30561 & 03-30601
Summary Calendar

KF INDUSTRIES, INC.

Plaintiff-Counter Defendant-Appellee

v.

TECHNICAL CONTROL SYSTEMS, INC.

Defendant-Counter Claimant-Appellant

Appeals from the United States District Court
for the Western District of Louisiana
01-CV-2297

Before JONES, BENAVIDES, and CLEMENT, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

Plaintiff-Appellee KF Industries is a supplier of valves used

in oilfield equipment, and Defendant-Appellant Technical Control

Systems ("TCS") is a former distributor of KF products. After the

contractual relationship between KF and TCS ended, TCS

unsuccessfully sued KF in Louisiana state court for breach of

---

[*]Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

contract.  Several years later, KF sued TCS in federal court for payments due on an open account.  TCS responded with counterclaims alleging breach of contract and unfair trade practices.  The district court granted KF's motion for summary judgment on both the original suit and the counterclaims.  TCS now appeals the district court's dismissal of TCS's counterclaims and the district court's award of attorney's fees to KF.  We affirm.

I.

The contractual relationship between TCS and KF began in 1995, when the two parties agreed to make TCS the exclusive distributor of KF's floating compact ball valves.  In 1996, the contract expired, and KF rejected TCS's offer to renew on the same terms. The parties eventually agreed on a new contract that allowed KF to terminate the relationship immediately under certain conditions.

The parties' contractual relationship continued through 1999. In April 1999, TCS purchased approximately $200,000.00 in valves from KF.  Over the next few months, TCS paid for some of that inventory.  However, when TCS attempted to purchase replacement parts for some of the valves, KF refused.  KF informed TCS that the valves and replacement parts would be available only through a company run by Vernon Green, a former TCS officer and employee who had left TCS and started his own oilfield supply company in 1996. TCS did not purchase the KF parts through Mr. Green's company, but instead began purchasing a different line of valves from one of KF's competitors.  This new type of valve was incompatible with KF

2

products, and TCS was left with approximately $100,000.00 in unusable KF parts.

In September 1999, TCS sued Vernon Green and KF in Louisiana state court for civil conspiracy and for tortious interference with contractual relations. TCS's suit alleged that KF and Mr. Green colluded to cause damage to TCS and that KF agreed to sell products directly to Mr. Green's company to TCS's detriment. In December 2000, TCS amended its suit to add claims that KF had breached the parties' 1995-1996 exclusive marketing contract by failing to renegotiate in good faith. According to TCS, Mr. Green had surreptitiously funneled information to KF that gave KF an advantage in the negotiations. The state court granted summary judgment for KF on all TCS's claims. *See Technical Control Sys. v. Green*, No. 97-2322-1A (La. Dist. Ct. Jan. 3, 2001); *Technical Control Sys. v. Green*, No. 97-2322-1A (La. Dist. Ct. Feb. 14, 2001).

After the state court decision, KF demanded in writing the $113,867.13 TCS still owed for its April 1999 valve order. TCS paid only $100 of this amount, and KF brought an open account suit in federal district court for the balance, attorney's fees, and costs. TCS asserted, among other defenses, the defense of set-off. TCS also countersued for breach of contract and unfair trade practices. According to TCS, KF's delivery of valves constituted an implied contract to sell TCS replacement parts for those valves;

3

when KF refused to sell replacement parts, it breached the contract and engaged in unfair trade practices.

The district court granted KF's motion for summary judgment on KF's open account claim and on TCS's counterclaims. The district court reasoned that res judicata preempted TCS's counterclaims because the earlier state court decision had already adjudicated TCS's contractual relationship with KF. TCS has not challenged the grant of summary judgment on KF's open account claim, but has appealed the grant of summary judgment on the counterclaims. In a later ruling, the district court awarded KF's motion for attorneys' fees, and TCS appealed that ruling as well. The two appeals have been consolidated.

## II.

The first issue in this appeal is whether res judicata bars TCS's counterclaims for breach of contract and unfair trade practices. We conclude that res judicata bars those counterclaims.

To determine the preclusive effect of a prior Louisiana court judgment, we apply Louisiana law, in this case Louisiana Revised Statute § 13:4321.[1] *Lafreniere Park Found. v. Broussard*, 221 F.3d

---

[1]     That statute provides:
        Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
        . . . .
        (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject

4

804, 808 (5th Cir. 2000).  As interpreted by the Fifth Circuit, § 4231 instructs that a state court's dismissal of a claim bars a subsequent federal suit if

> (1) the judgment was valid; (2) the judgment is final; (3) the parties to the two actions are the same; (4) the cause of action asserted in the federal suit existed at the time of the prior state court judgment; and (5) the cause of action asserted in the federal suit arose out of the transaction or occurrence that was the subject matter of the state court litigation.

*Id.* at 809.  In this case, the first four requirements are met: The state court judgment is valid and final, the parties to the two actions are the same, and TCS's action for breach of implied contract accrued well before the filing of its amended state court petition in December 2000.

TCS contests only the district court's determination that its state court claim and subsequent federal counterclaims focus on the same "transaction or occurrence."  TCS delineates two transactions: first, KF's 1996 refusal to renew the exclusive contract, which was at issue in the state suit; and second, KF's 1999 refusal to do further business with TCS, which is at issue in the current federal counterclaims.  Because these two events were separate "transactions or occurrences," TCS argues, res judicata does not bar the current suit.  KF responds that a single "transaction or

_____

> matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

La. Rev. Stat. Ann. § 13:4231 (West 1991).

occurrence" underlies both TCS's state court claims and TCS's federal counterclaims: the ongoing contractual relationship between KF and TCS.

Courts determine pragmatically whether a particular factual grouping constitutes a single transaction or multiple discrete transactions. *Lafreniere*, 221 F.3d at 810. The preclusive effect of § 4231 is broad. *Id.* A state court judgment extinguishes all claims related to "all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* (quoting Restatement (Second) of Judgments § 24(2)).[2] A single exchange does not necessarily represent a single "transaction or occurrence"; rather, "[a]ll logically related events entitling a person to institute legal action against another generally are regarded as comprising a 'transaction or occurrence.'" *Hy-Octane Invs. v. G&B Oil Prods.*, 702 So. 2d 1057, 1060 (La. Ct. App. 1997).

Viewing the case pragmatically, and mindful of the broad preclusive effects intended by § 4231, we conclude that TCS's state and federal claims revolve around a single series of connected transactions such that the later federal claims fall prey to res judicata. TCS's amended state complaint alleged that KF failed to renegotiate in good faith the parties' exclusive contract. The

---

[2] Louisiana law controls, but "[b]ecause § 4231 is modeled on the federal doctrine [of res judicata] and Restatement of Judgments . . . we consult federal res judicata jurisprudence as well as the Restatement of Judgments." *Lafreniere*, 211 F.3d at 808.

6

claim of bad-faith renegotiation implicates not only this prior contract, but also the renegotiated contract; presumably, the renegotiated contract would have been different but for KF's bad faith renegotiation. Purchases made under this renegotiated contract, in turn, gave rise to the implied contract on which TCS now premises its federal counterclaims. Thus, by alleging bad faith renegotiation, TCS brought its 1999 purchases from KF within the scope of the state court suit. Because TCS's federal counterclaims arise from that 1999 purchase, res judicata bars those claims.

TCS argues that its state claims and federal counterclaims arise from two different contracts and focus on two different aspects of KF and TCS's faltering relationship. However, in determining the boundaries of a "transaction or occurrence," we must look to the overall factual predicate for the claims, not particular facets of that factual predicate. *See In re Intelogic Trace, Inc.*, 200 F.3d 382, 386 n.3 (5th Cir. 2000); *Hy-Octane*, 702 So. 2d at 1060. For the same reason, the fact that TCS has also brought counterclaims for unfair trade practices is irrelevant. Like the counterclaims for breach of contract, the counterclaims for unfair trade practices arise from a common factual predicate: the dispute over KF's refusal to sell parts to TCS.

At the same time, we decline to endorse the broader proposition that all claims connected to an ongoing business or

7

contractual relationship must be presented or forfeited whenever two parties face off in court. Rather, we confine our holding to a pragmatic assessment of the particular facts at issue in this case. When, as in this case, state claims concerning one contract necessarily implicate subsequent contracts, all claims regarding those contracts should be brought in a single suit. This conclusion is consistent with the purposes of Louisiana res judicata law, which aims to prevent multiple lawsuits and to promote judicial efficiency. *See* La. Rev. Stat. Ann. § 9:4321 cmt. a. TCS could easily have amended its state pleadings, which already included breach of contract claims, to cover the allegations now presented in its federal counterclaims. Res judicata bars TCS's counterclaims.[3]

## III.

We next consider the district court's award of attorney's fees. In calculating attorney's fees, the district court gave KF an award that accounted not only for time spent pursuing the open account claim, but also for time spent defending against TCS's counterclaims. TCS concedes that some attorney's fees are appropriate but argues that the award should not include fees related to defending the counterclaims. KF argues that it should recover fees for defense of the counterclaims because that defense was necessary to vindicate its open account claim. The magistrate

---

[3] Because res judicata bars TCS's counterclaims, we do not consider KF's alternative arguments.

judge agreed with KF, and we affirm.

Because this is a diversity case, Louisiana law governs attorney's fees.[4] *See Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 875 n.27 (5th Cir. 2002); *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Louisiana statute specifically provides for recovery of attorney's fees in suits on open accounts. La. Rev. Stat. Ann. § 9:2781(A) (West. Supp. 2003).[5]

Awards of attorney's fees under state law are reviewed for abuse of discretion. *Mathis*, 302 F.3d at 461. However, an error of law is always an abuse of discretion. *See Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 646 (5th Cir 2002). Thus, we must address TCS's contention that the district court erred as a matter of law in awarding fees for defense against a counterclaim.

Given the circumstances presented in this case, we conclude that the district court did not err. TCS responded to KF's suit with the affirmative defense of set-off. In particular, TCS argued

---

[4] The magistrate judge calculated the attorney's fees award using methods approved for calculating fees under federal law, but TCS has not challenged that aspect of the calculations.

[5] Louisiana's open account statute provides:
When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant.
La. Rev. Stat. Ann. § 9:2781(A) (West. Supp. 2003).

9

that the open account should not include charges for $ 90,000 of unusable inventory. TCS's counterclaim proceeds from an identical premise: that TCS is not liable for $90,000 worth of unusable parts. Because the set-off defense asserted to the open account claim relies upon the same facts and theory as the breach of contract counterclaim, KF in prosecuting its open account claim necessarily and simultaneously defended itself against TCS's counterclaim. Louisiana statute grants KF the right to recover the attorney's fees expended in prosecuting its open account claim. La. Rev. Stat. Ann. § 9:2781(A). KF does not lose that right because TCS has chosen to recharacterize one of its defenses as a counterclaim.

We recognize that such fees are often not recoverable under the rule followed in *Tolmas v. Weichert*, 616 So. 2d 244 (La. Ct. App. 1993), and *Moreland v. Lowdermilk*, 709 F. Supp. 722 (W.D. La. 1989), both of which involve the deaths of horses put up for boarding. In *Tolmas*, the horse's owner sued, and the stable reconvened on an open account.[6] The stable prevailed and sought attorney's fees. The court ruled that the stable could recover those attorney's fees related to its open account counterclaim, but not those fees related to defending against the horse owner's original complaint. 616 So. 2d at 247; *accord Moreland*, 709 F.

---

[6] Under the civil law terminology of Louisiana, a counterclaim is called a reconventional demand. Black's Law Dictionary 441, 1278 (7th ed. 1999).

10

Supp. at 732.  *Tolmas* and *Moreland*, however, did not involve defenses and counterclaims that were practically identical.  In the case before us, TCS's counterclaims raised the same issues as the defense of set-off and thus forced KF, the open account claimant, to litigate the counterclaims.  We therefore find *Tolmas* and *Moreland* distinguishable.

Because the district court committed no error of law in awarding attorney's fees for defense of the counterclaim, and because TCS offers no other grounds for overturning the district court's decision, we conclude that the district court did not abuse its discretion.

IV.

We therefore AFFIRM the district court's grant of summary judgment.  We likewise AFFIRM the district court's award of attorney's fees.

11